CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

10/23/2023

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| **TRE'MANE FUQUA** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** __6:23CV00065__ |
| | ) | |
| **CENTRA HEALTH, INC.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOE,** | ) | |
| *Defendants.* | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Tre'mane Fuqua ("Mr. Fuqua") to bring this civil rights action to recover damages arising from the injuries he sustained when his Fourth Amendment rights were violated during his unlawful apprehension, detention and for  (i) assault, (ii) battery, (iii) intentional infliction of emotional distress, (iv) negligence, (v) gross negligence and (vi), willful, wanton and reckless negligence.

## JURISDICTION AND VENUE

1.      This action arises under federal law and the Fourth and Fourteenth Amendments to the United States Constitution.

2.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1983 and 1985.

3.      This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named defendants is a resident of the Western District of Virginia pursuant to 28 U.S.C. §1391(c)(2),

and (ii) pursuant to 28 U.S.C. §1391(b)(2) all of the events or omissions giving rise to the claims occurred in the City of Lynchburg in the Western District of Virginia.

## PARTIES

5.      Plaintiff TRE'MANE FUQUA  ("MR. FUQUA") is an adult resident of the City of Lynchburg, Virginia.

6.      Defendant CENTRA HEALTH, INC. ("CENTRA") is a Virginia non-stock corporation that operated Lynchburg General Hospital and is headquartered in the City of Lynchburg, Virginia.

7.      Defendant JOE DOE ("JOHN DOE"). is a security guard who was employed by CENTRA on Oct 22, 2021.

## FACTS

8.      On October 21, 2021, CENTRA owned and operated Lynchburg General Hospital, which is located entirely within the City of Lynchburg, Virginia.

9.      On October 21, 2021, CENTRA employed JOHN DOE as a security guard.

10.      On October 21, 2021, MR. FUQUA drove a 2014 Toyota Avalon  to Lynchburg General Hospital to attend to a medical emergency involving his girlfriend.

11.      When MR. FUQUA arrived at Lynchburg General Hospital, a Lynchburg police officer met him and handed him his girlfriend's telephone and other property.

12.      MR. FUQUA drove to the entrance of the Emergency Room and, while remaining in the Toyota Avalon, he handed his girlfriend's telephone and other property to his girlfriend's mother through the driver's side front window.

13.      Unbeknownst to MR. FUQUA, a scuffle had broken out in the Emergency Room between several of his girlfriend's family members.

14.     One of his girlfriend's male family members approached the driver's door of the Toyota Avalon and began to scream and to assault MR. FUQUA.

15.     MR. FUQUA remained in the Toyota Avalon and did not engage the person who was screaming and attempting to assault him.

16.     MR. FUQUA did not commit any crime or violate any law while at Lynchburg General Hospital at any time on October 23, 2021.

17.     There were no warrants outstanding against MR. FUQUA on October 23, 2021.

18.     JOHN DOE was on duty and working within the scope of his employment by CENTRA when MR. FUQUA was parked near the Emergency Room on October 23, 2021.

19.     While MR. FUQUA was parked near the Emergency Room, and while MR. FUQUA had his foot on the brake pedal of the Toyota Avalon and while the drive gear of the car's automatic transmission was engaged, JOHN DOE opened the driver's door and pulled MR. FUQUA from the car and slammed him into the pavement, turned him face down into the pavement and then put his weight on MR. FUQUA's back to pin him to the pavement, before handcuffing MR. FUQUA.

20.     MR. FUQUA was wearing his seatbelt when JOHN DOE pulled him out of the Toyota Avalon and MR. FUQUA'S shoulder was injured when JOHN DOE pulled him from the car.

21.     MR. FUQUA was further injured when JOHN DOE slammed him into the pavement.

22.     Without basis, JOHN DOE called for the assistance of nearby law-enforcement officers and asked them to draw firearms against MR. FUQUA.  These law-enforcement officers drew their sidearms and pointed them toward MR. FUQUA, before another nearby law-enforcement officer told them to stand down.

23.     Because the drive gear of the Toyota Avalon was engaged, after JOHN DOE removed MR. FUQUA from the Toyota Avalon, it began to move forward, ran into a wall and was totaled.

24.     After handcuffing MR. FUQUA, JOHN DOE forced MR. FUQUA into the back of a police car and tried to convince the police officers that MR. FUQUA had committed a crime.

25.     MR. FUQUA remained handcuffed in the back of the police car for approximately 30 minutes.

26.     The police officer who handed MR. FUQUA the property that belonged to MR. FUQUA's girlfriend, witnessed JOHN DOE removing MR. FUQUA and directed the police officers to immediately release MR. FUQUA because MR. FUQUA has not committed any crime.  The polices officers then released MR. FUQUA.

27.     The police officer who witnessed JOHN DOE assaulting MR. FUQUA asked MR. FUQUA if he wanted to take out an assault charge on JOHN DOE.

28.     MR. FUQUA learned that his girlfriend had died in the Emergency Room and so he did not pursue criminal charges against JOHN DOE.

29.     Because JOHN DOE had destroyed his Toyota Avalon, MR. FUQUA had to call a taxi to leave the hospital.

30.     The next day, at CENTRA's demand, MR. FUQUA had the Toyota Avalon towed away from the hospital.

31.     MR. FUQUA was forced to rent and lease several cars to replace the Toyota Avalon that JOHN DOE destroyed.

32.     Upon information and belief, JOHN DOE is a Special Conservator of the Peace, appointed to enforce laws by the Commonwealth of Virginia pursuant to Code of Virginia § 19.2-13.

33.     At all times pertinent to this Complaint, JOHN DOE was in uniform and acting under color of Virginia state law by means of his appointment as Special Conservator of the Peace.

34.     JOHN DOE acted to injure MR. FUQUA in concert with sworn law-enforcement officers who were on-duty and acting under color of Virginia state law.

35.     JOHN DOE lacked probable cause to arrest MR. FUQUA when he removed MR. FUQUA from the Toyota Avalon.

36.     JOHN DOE lacked any reasonable and articulable suspicion to believe that MR. FUQUA was engaged in a criminal activity.

37.     MR. FUQUA did not consent to being seized by JOHN DOE at any time on October 23, 2021.

38.     MR. FUQUA did not consent to being touched by JOHN DOE at any time on October 23, 2021.

39.     CENTRA has a practice of hiring inexperienced security guards for low pay and then petitioning for their appointment as Special Conservators of the Peace.

40.     CENTRA is a private employer, not a municipality or governmental agency.

41.     Code of Virginia § 19.2-13 specifically provides that the appointment of a Special Conservator of the Peace "shall not relieve his employer, principal or master from civil liability to another arising out of any wrongful action or conduct committed by such special conservator of the peace while within the scope of his employment."

42.     MR. FUQUA suffered serious and extensive personal injuries as a result of the unlawful seizure and use of excessive force by JOHN DOE on October 22, 2021 as described above, including: (i) loss of liberty, (ii) extreme pain and suffering, (iii) shoulder injury, (iv) contusions, (v) abrasions, (vi) fear, (vii) humiliation, (viii) anguish, (ix) anxiety and incurred physical and mental injuries and (x) costs of necessary medical care.

43.     MR. FUQUA suffered significant property damage and injuries as a result of JOHN DOE's actions, including (i) the total loss of the 2014 Toyota Avalon, (ii) the cost of rental cars to replace the Toyota Avalon, (iii) the cost of a leased vehicle to replace the Toyota Avalon (iv) taxi fare and (v) towing costs incurred in removing the Toyota Avalon from the hospital.

### COUNT ONE

### VIOLATION OF CIVIL RIGHTS:
### FALSE IMPRISONMENT/UNLAWFUL SEIZURE

### (42 U.S.C. §1983 - 4th and 14th Amendments)

44.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

45.     The Fourth Amendment to the United States Constitution prohibits unreasonable seizures of a person or property.

46.     MR. FUQUA was seized, as contemplated by the Fourth Amendment, when JOHN DOE grabbed him and forced him out of the Toyota Avalon on October 23, 2021.

47.     MR. FUQUA remained seized, as contemplated by the Fourth Amendment, until he was released from handcuff and custody on October 23, 2021.

48.     MR. FUQUA was unlawfully seized by JOHN DOE on October 23, 2021, as described above in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

49.     JOHN DOE acted with actual malice toward MR. FUQUA when he unlawfully detained

MR. FUQUA and used unlawful force against him in violation of the Fourth and Fourteenth

Amendments on October 23, 2021 as described above.

50.     JOHN DOE acted with complete disregard for MR. FUQUA's constitutional rights when

he seized MR. FUQUA and used unlawful force against him on October 23, 2021.

51.     The injuries MR. FUQUA sustained were directly and proximately caused by his

unlawful seizure by JOHN DOE.

52.     MR. FUQUA is entitled to recover compensatory and punitive damages from both JOHN

DOE and CENTRA for the damages he sustained as a result of his unlawful seizure and use of

force by JOHN DOE on October 23, 2021.

53.     MR. FUQUA is entitled to recover his costs and reasonable attorney's fees incurred in

bringing this cause of action

**COUNT TWO**

**VIOLATION OF CIVIL RIGHTS:**
**EXCESSIVE FORCE**

**(42 U.S.C. §1983 - 4th and 14th Amendments)**

54.     All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

55.     The Fourth and Fourteenth Amendments to the United States Constitution forbid the use

of unreasonable force by law-enforcement officers.

56.     JOHN DOE used objectively unreasonable force against MR. FUQUA on October 23,

2021 when he pulled MR. FUQUA from his car, called for the deployment of firearms and

slammed MR. FUQUA into the pavement.

57.     The use of force by JOHN DOE against MR. FUQUA on October 23, 2021 violated the Fourth Amendment.

58.     JOHN DOE acted with actual malice toward MR. FUQUA when he used unreasonable and excessive force against MR. FUQUA in violation of the Fourth and Fourteenth Amendments on October 23, 2021 as described above.

59.     JOHN DOE acted with complete disregard for MR. FUQUA's constitutional rights when he used unreasonable and excessive force against MR. FUQUA on October 23, 2021.

60.     The injuries MR. FUQUA sustained were directly and proximately caused by the unreasonable and excessive use of force by JOHN DOE on October 23, 2021 as described above.

61.     MR. FUQUA is entitled to recover compensatory and punitive damages from both JOHN DOE and CENTRA for the damages he sustained as a result of the unreasonable and excessive use of force against him by JOHN DOE on October 23, 2021 as described above.

62.     MR. FUQUA is entitled to recover his costs and reasonable attorney's fees incurred in bringing this cause of action

### COUNT THREE

### LIABILITY OF CENTRA HEALTH, INC.:  FAILURE TO TRAIN

### (42 U.S.C. §1983 - 4th and 14th Amendments)

63.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

64.     CENTRA maintains an unconstitutional custom or practice of failing to train its security guards in the constitutional limit of their authority.  This custom or practice is evidenced by a pattern of conduct that includes the following examples:

a.      On January 11, 2016, a CENTRA security guard shot a patient in the back inside a secure psychiatric unit at Lynchburg General Hospital with the knowledge that the Taser the patient held was inoperable.  The officer involved in the shooting testified in a deposition that his actions were in conformity CENTRA policy.

b.      On January 16, 2016, two CENTRA security guards chased down an unarmed patient who left the hospital voluntarily and lawfully and who had committed no crime, and upon capturing the patient, drove a Taser into his back, thereby causing the patient excruciating pain and permanent scarring.  Both officers testified that they acted in conformity with CENTRA policy.

c.      On May 28, 2018, a CENTRA security guard deployed a Taser against a delusional patient recovering from surgery in the stairwell of the hospital when the patient was not armed and did not pose an immediate threat to anyone.  The incident report states that the guard acted in conformity with CENTRA policy.

65.     CENTRA's failure to train its security guards in the constitutional limits of their authority was a driving force behind JOHN DOE's unconstitutional acts described above.

66.     CENTRA's failure to train its security guards in the constitutional limits of their authority was a direct and proximate cause of the injures and damages MR. FUQUA sustained.

67.     MR. FUQUA is entitled to recover his damages, including compensatory and punitive damages from CENTRA for its failure to train its security guards in the constitutional limits of their authority.

68.     MR. FUQUA is entitled to recover his costs and reasonable attorney's fees incurred in bringing this cause of action.

## COUNT  FOUR

**LIABILITY OF CENTRA HEALTH, INC.:  FAILURE TO DISCIPLINE**

**(42 U.S.C. §1983 - 4th and 14th Amendments)**

69.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

70.     CENTRA maintains an unconstitutional custom or practice of failing to discipline its security guards for violating the constitutional rights of the subjects these guards encounter.. This custom or practice is evidenced by a pattern of conduct that includes the following examples:

a.  On January 11, 2016, a CENTRA security guard shot a patient in the back inside a secure psychiatric unit at Lynchburg General Hospital with the knowledge that the Taser the patient held was inoperable.  The security guard involved in the shooting was not disciplined.

b.  On January 16, 2016, two CENTRA security guards chased down an unarmed patient who left the hospital voluntarily and lawfully and who had committed no crime, and upon capturing the patient, drove a Taser into his back, thereby causing the patient excruciating pain and permanent scarring.  The security guards involved were not disciplined.

c.  On May 28, 2018, a CENTRA security guard deployed a Taser against a delusional patient recovering from surgery in the stairwell of the hospital when the patient was not armed and did not pose an immediate threat to anyone.  The incident report states that the guard acted in conformity with CENTRA policy. The security guard involved was not disciplined.

71.     CENTRA's failure to discipline its security guards for violating the constitutional rights of the subjects they encounter was a driving force behind JOHN DOE's unconstitutional acts described above.

72.     CENTRA's failure to discipline its security guards for violating the constitutional rights of the subjects they encounter was a direct and proximate cause of the injures and damages MR. FUQUA sustained.

73.     MR. FUQUA is entitled to recover his damages, including compensatory and punitive damages from CENTRA for its discipline its security guards for violating the constitutional rights of the subjects they encounter.

74.     MR. FUQUA is entitled to recover his costs and reasonable attorney's fees incurred in bringing this cause of action

## COUNT FIVE

## CIVIL ASSAULT & BATTERY

## (Virginia Common Law Claim)

75.      All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

76.     JOHN DOE acted intentionally when he removed MR. FUQUA from the Toyota Avalon on October 23, 2021 as described above.

77.     When JOHN DOE removed MR. FUQUA from the Toyota Avalon on October 23, 2021, as described above, he lacked any legal justification for doing so.

78.     When JOHN DOE removed MR. FUQUA from the Toyota Avalon on October 23, 2021, as described above, he placed MR. FUQUA in reasonable apprehension of imminent harm.

79.     When JOHN DOE removed MR. FUQUA from the Toyota Avalon on October 23, 2021, as described above, he offensively touched MR. FUQUA.

80.     MR. FUQUA was both assaulted and battered by JOHN DOE on October 23, 2021.

81.     MR. FUQUA acted with actual malice toward MR. FUQUA when he assaulted and battered him.

82.     The above-described assault and battery was a direct and proximate cause of MR. FUQUA's damages and injuries.

83.     MR. FUQUA is entitled to recover compensatory and punitive damages from JOHN DOE and CENTRA as result of his assault and battery by JOHN DOE on October 23, 2021.

**COUNT SIX**

**GROSS, WILLFUL, WANTON AND RECKLESS NEGLIGENCE  AND SIMPLE NEGLIGENCE**

**(Virginia Common Law Claim)**

84.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

85.     JOHN DOE had a legal duty to use care to protect MR. FUQUA's constitutional rights.

86.     JOHN DOE had the legal duty to use appropriate force in the course of his employment.

87.     JOHN DOE has the legal duty to ascertain facts before using force against visitors to Lynchburg General Hospital,

88.     JOHN DOE has the legal duty to ascertain facts before using force against MR. FUQUA on October 23, 2021, including (i) whether removal of MR. FUQUA from the Toyota Avalon was justified, (ii) whether it was safe to remove MR. FUQUA from the car, and (iii) whether it was appropriate to order guns drawn against MR. FUQUA.

89.     JOHN DOES breached each of these duties to MR. FUQUA on October 23, 2021, when he removed MR. FUQUA from his Toyota Avalon and detained him as described above.

90.     JOHN DOE acted with utter disregard to MR. FUQUA's rights or welfare when he acted in the manner described above, by denying even scant care to MR. FUQUA.

91.     The above-described actions of JOHN DOE were willful, wanton, and reckless.

92.     The injuries sustained by MR. FUQUA, as described above. were directly and proximately caused by the negligence of JOHN DOE.

93.     MR. FUQUA is entitled to recover (a) reasonable and appropriate compensatory damages (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from each of the defendants CENTRA and JOHN DOE for this cause of action.

AND NOTHING FURTHER REMAINING, Plaintiff, Tre'mane Fuqua, requests that this Court grant him the following relief:

(a)     Judgment against each of the Defendants, jointly and severally, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) and such additional damages as may be proven at trial;

(b)     Punitive damages from each of the Defendants in such amount as proven at trial;

(c)     Costs and expenses, including reasonable attorney's fees;

(d)     Injunctive relief to prevent further unlawful conduct;

(e)     All such other legal and equitable relief as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Respectfully Submitted,

**TRE'MANE FUQUA**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By:** <u>/s/ M. Paul Valois</u>
 **M. Paul Valois, Esquire**
 **Counsel for Plaintiff**
 **Virginia State Bar No. 72326**
 **mvalois@vbclegal.com**